Electronically Filed by Superior Court of California, County of Orange, 06/27/2023 02:59:00 PM.
30-2023-01332927-CU-WT-CJC - ROA # 8 - DAVID H. YAMASAKI, Clerk of the Court By A. Gill, Deputy Clerk.

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
EMERALD X, LLC, a Delaware Limited Liability Company; EMERALD EXPOSITIONS, LLC, a Delaware Limited Liability Company; and DOES 1 through 50, inclusive.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

RAYMOND KANG, individually,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is: *(El nombre y dirección de la corte es):* Orange
700 Civic Center Drive, Santa Ana, CA 92701

Judge Kimberly A. Knill

CASE NUMBER: *(Número del Caso):*
30-2023-01332927-CU-WT-CJC

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
David Ratner and Shelley Molineaux, Ratner Molineaux, LLP, 1990 N. California Blvd Suite 20, Walnut Creek, CA 94596, 925-239-0899

DATE: 06/27/2023
*(Fecha)*

DAVID H. YAMASAKI, Clerk of the Court

Clerk, by A. Gill , Deputy
*(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date)*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

**EXHIBIT A**
12

Electronically Filed by Superior Court of California, County of Orange, 06/26/2023 03:08:39 PM.
30-2023-01332927-CU-WT-CJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By T. Merck, Deputy Clerk.

1 | DAVID S. RATNER (SBN 316267)
SHELLEY A. MOLINEAUX (SBN 277884)
2 | RATNER MOLINEAUX, LLP
3 | 1990 N. California Blvd., Suite 20
Walnut Creek, CA 94596
4 | Tel: (925) 239-0899
david@ratnermolineaux.com
5 | shelley@ratnermolineaux.com

6 | Attorneys for Plaintiff
7 | RAYMOND KANG

8

9

10 | **IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11 | **COUNTY OF ORANGE**    Assigned for all purposes to
Judge Kimberly A. Knill

12 | RAYMOND KANG, individually,    Case No.  30-2023-01332927-CU-WT-CJC

13 |           Plaintiff,    **COMPLAINT FOR DAMAGES**

14 | v.

15 |    1. Retaliation, Cal. Gov't Code §12940(h)
2. Failure to Prevent Discrimination and
16 | EMERALD X, LLC, a Delaware Limited Liability    Harassment, Cal. Gov't Code § 12940
Company; EMERALD EXPOSITIONS, LLC, a    3. Wrongful Termination in Violation of Public
17 | Delaware Limited Liability Company; and DOES 1    Policy
through 50, inclusive.    4. Intentional Infliction of Emotional Distress
18 |    5. Age Discrimination, Cal. Gov. Code § 12940
          Defendants.    6. Racial Discrimination, Cal. Gov. Code § 12940
19 |    7. Failure to Provide Personnel Records, Cal.
Labor Code § 1198.5
20 |    8. Failure to Provide Payroll Records, Cal. Labor
Code § 226(b)
21

22 |    **DEMAND FOR JURY TRIAL**

23

24 |         1.    Plaintiff RAYMOND KANG ("Kang") individually, brings this action against Defendants

25 | EMERALD X, LLC ("Emerald") a Delaware Limited Liability Company; EMERALD EXPOSITIONS,

26 | LLC ("Emerald Expositions") a Delaware Limited Liability Company; and DOES 1 through 50,

27 | inclusive.

28 |                              ***PARTIES***

1
COMPLAINT FOR DAMAGES

**EXHIBIT A**
13

2.     Plaintiff is, and at all times relevant to this action was, a resident of the City of Laguna Niguel, California. The events giving rise to this action arose in San Juan Capistrano, California.

3.     Plaintiff is informed and believes, and based thereon alleges, that Defendant Emerald X, LLC is Delaware Limited Liability Company and is authorized to do business in California.

4.     Plaintiff is informed and believes, and based thereon alleges, that Defendant Emerald Expositions, LLC is Delaware Limited Liability Company and is authorized to do business in California.

5.     Plaintiff does not know the true names of Defendants Does 1 through 50, inclusive, and therefore sues them by those fictitious names.  The names, capacities, and relationships of Defendants Does 1 through 50, inclusive, will be alleged by amendment to this Complaint when the same are known to Plaintiff.

6.     The true names and capacities, whether individual, corporate, associate or otherwise, of defendants Does 1 through 50 ("Does"), inclusive and each of them, are not known to Plaintiff at this time. Such Does are legally responsible for the events and happenings described herein and for the damages proximately caused thereby. Plaintiff will seek the leave of the Court to amend this complaint to set forth the true names and capacities of any such Does when they have been ascertained.

7.      On information and belief, at all times mentioned herein, defendants, inclusive and each of them, including without limitation any Does, were acting in concert and participation with each other; were joint participants and collaborators in the acts complained of; and were the agents and/or employees of one another in doing the acts complained of herein, each acting within the course and scope of said agency and/or employment.

8.     Emerald, Emerald Expositions, and Does 1 through 50, inclusive, are collectively referred to hereafter as "Defendants".

### *JURISDICTION AND VENUE*

9.     This Court has jurisdiction over Defendants because at all times relevant, they were authorized to transact, and are transacting business in California.

10.     Venue is proper in this Court pursuant to Code of Civil Procedure § 395, because the acts, events and omissions complained of herein occurred in Orange County, California.

### *EXHAUSTION OF ADMINISTRATIVE REMEDIES*

11. On or about June 16, 2023, Plaintiff obtained a Right to Sue Letter from the California Civil Rights Department attached hereto as Exhibit A.

### *GENERAL ALLEGATIONS*

12. Raymond Kang ("Kang") is a 53-year-old Asian male who began working for Miller Freeman, Inc., Emerald X, LLC's predecessor ("Emerald"), on September 1, 1993, as a Graphic Designer. Throughout his long tenure, Emerald had gone through different parent company name changes beginning with the first change in 2000 under the name of VNU Business Media, Inc. and then Nielsen Business Media, Inc. in 2006. Mr. Kang eventually became a Creative Director for Emerald Expositions, LLC (another predecessor) in 2013, until Emerald X, LLC wrongfully fired him on March 30, 2023, under the pretext of a reduction in force (RIF).

13. Throughout his employment at Emerald and its predecessor companies, Mr. Kang had been a dedicated employee who was held in high regard until Emerald was subjected Mr. Kang to age and race/national origin discrimination, retaliation, harassment, and wrongful termination.

14. Throughout Mr. Kang's entire career, Emerald denied Mr. Kang the promotions he rightfully deserved. Instead, Emerald promoted less qualified, less tenured, mostly younger, white employees to positions that should have gone to Mr. Kang.

15. Specifically, Emerald passed Mr. Kang over for management positions in 2003, 2007, 2020 and 2022. Under the VP of Creative Services, John Genzo, it appeared most promotions went to younger, white employees.

16. On April 23, 2003, Emerald denied Mr. Kang a promotion opportunity to a department manager position. Mr. Kang had the most tenure, overseeing the most business units with higher revenues. He received a perfect 2002 performance rating and won the most industry awards. Mr. Kang was overlooked and passed over to a less tenured, white colleague, Rene Gauthier. The hiring Group Marketing Director, Michael Baker, stated "you don't want this job, it's just admin stuff" in response to Mr. Kang's interest in the position.

17. On March 27, 2007, Mr. Kang was denied a promotion opportunity for a department manager position a second time. Mr. Kang had the most tenure, overseeing the most business units with higher revenues. Mr. Kang received an excellent 2006 performance rating and won the most industry

awards. Still, Mr. Kang was overlooked and passed over by a less tenured, white colleague, Jennie Brewton. The hiring Group Marketing Director, Jim Palmer, did not allow Mr. Kang any formal opportunity to apply.

18.    On September 17, 2007, Mr. Kang reported concerns over Emerald's performance review and promotional processes not allowing for equal opportunity. HR representative, Mardel Nesby, agreed that the performance review process required improvement. Mr. Nesby confirmed he would not have handled the promotion in the way that Mr. Palmer had handled it.

19.    On January 15, 2008, Mr. Kang's "Development Plan" was left blank. Human Resources Generalist, Sara Rogers, stated that the managers did not know how to use the new system, yet every other form field was filled out in Mr. Kang's performance review.

20.    On October 22, 2008, Mr. Kang had asked the VP and GM of the Sports Group, Joe Flynn, for input on a development/career growth plan. No response was given.

21.    On June 11, 2009, Mr. Kang was diagnosed with Barrett's Esophagus due to elevated acid production from stress going on in the workplace environment.

22.    On November 16, 2009, Mr. Kang organized a meeting with the VP of Marketing, Joanne Wheatley, to discuss the value of diversity, lack of diversity in Emerald's leadership positions, and implementation of a mentorship program. At the meeting, Ms. Wheatley asked Mr. Kang, "Why are you talking about diversity?" Following this meeting, Mr. Kang's assignment changed adversely.

23.    On February 23, 2010, Mr. Kang was transferred to a business unit with an office 60 miles away in Los Angeles, CA from his home in south Orange County, CA, resulting in a 1.5 to 2-hour commute. In the breakroom, Group President David Loechner suggested Mr. Kang move to Los Angeles when communicating about the commute. In addition to the job assignment change, Mr. Kang was restructured into a lower position in reporting while being given more tasks, not provided a performance review, and received a 0% merit increase, unlike his white peers.

24.    On August 19, 2010, Mr. Kang was excluded from a series of leadership program meetings covering company culture, leadership, coaching and development. He was not afforded the same opportunities as his colleagues, despite his request to participate. He was not provided with any reasoning for being excluded from the program.

25.    On December 9, 2010, Mr. Kang was excluded from a company mentorship program. He contacted HR to express his interest in participating in the mentorship program. The HR representative that organized the program, Tracey Syndor, informed Mr. Kang that the business leaders chose to remove Mr. Kang from the program.

26.    On November 1, 2019, the new CEO, Sally Shankland addressed Emerald's lack of diversity in senior management positions in response to Mr. Kang's comment that Emerald employees ranked 'diversity' and 'upward mobility' last on an employee satisfaction survey. Ms. Shankland stated the lack of diversity was due to "unconscious bias."

27.    On June 30, 2020, Mr. Kang expressed his concerns of racism and discrimination directly to the new interim CEO, Brian Field. Shortly thereafter, Mr. Field restructured Mr. Kang's department. Mr. Field promoted John Genzo, a white man with only 4 years' tenure, to Vice President of Creative Services without allowing others with 20+ years tenure the opportunity to apply. The two most senior Creative Directors overlooked for the opportunity were Mr. Kang, an Asian individual, and an African American individual.

28.    When Mr. Kang complained about Emerald's systemic discrimination, Mr. Field directed Mr. Kang to Angelique Carbo, EVP of People & Culture.

29.    On July 1, 2020, Ms. Carbo contacted Mr. Kang to discuss his exchange with Mr. Field. Ms. Carbo admitted that she had received similar complaints from other employees of discrimination saying the "diversity programs do not work." Ms. Carbo then forwarded Mr. Kang to Eric Reaves, Vice President of People and Culture.

30.    On July 9, 2020, Mr. Reaves contacted Mr. Kang to discuss the issues communicated with Ms. Carbo. Mr. Kang complained about an unethical and discriminatory sales practice of Emerald's largest business unit, ASD Marketplace. Mr. Kang described the past discrimination experienced by former African American, Hispanic, and Asian employees. Mr. Reaves also admitted he received similar complaints in the past from other employees. Mr. Reaves forwarded the issue to the Director of HR, Demetrius Junior.

31.    On July 22, 2020, Mr. Junior stated that the business unit ASD had put an end to discriminatory sales practice and had referred to it as "shenanigans".

32.     On February 10, 2021, Mr. Kang and Mr. Reaves discussed a new tool to help in reviews and promotions. Mr. Reaves stated, "if you start with a slate of white people, no minorities, the opportunity for those minorities in decision making forums get phased out". Mr. Reaves stated the organization was historically exclusionary. Mr. Reaves informed Mr. Kang that the CFO, David Doft, would not likely want to invest in proper diversity training due to high costs. Mr. Kang shared his complaints of being passed over for promotions, mentioning other incidences of other Asian, Black, and Hispanic employees also being adversely impacted by discrimination.

33.     On December 22, 2021, John Genzo, Vice President of Creative Services, removed the largest business unit, ASD Marketplace, from Mr. Kang's assignments and assigned the unit to himself. He also removed one of Mr. Kang's direct reports and one of his most recent hires, Caitlin Caruso, Lead Designer. Under Mr. Kang's assignment, ASD Marketplace exceeded its sales expectations. Emerald considered ASD Marketplace a "cash cow" for the company.

34.     On February 16, 2022, Mr. Kang reported discrimination experienced by a direct report, Natalie Thavenot, to Dawn Stewart, People & Culture Business Partner, and Mr. Reaves, VP of People & Culture. Having 9-10 years of tenure, Ms. Thavenot shared with Mr. Kang that she was frustrated she wasn't getting promoted quicker. Ms. Thavenot believed she was experiencing discrimination as others with less experience were getting promoted faster.

35.     On March 3, 2022, Mr. Kang reported that one of his direct reports, Marisa Lowey-Ball, received compensation that violated California law.

36.     In the Spring of 2022, Mr. Kang witnessed Mr. Genzo state that, "promotions go to those who take on responsibilities outside their normal duties and who work on the largest business units." Mr. Kang oversaw the largest business units in every promotion opportunity in his tenure with Emerald and worked on more outside corporate projects than any other peer.

37.     On March 15, 2022, Mr. Genzo removed Mr. Kang from weekly senior director meetings in retaliation for Mr. Kang reporting the wage violation.

38.     On March 25, 2022, Mr. Kang reported to Mr. Junior about the discrimination experienced by a direct report, Natalie Thavenot.

39.     On April 4, 2022, Mr. Genzo promoted two significantly less experienced, less tenured,

white males, Josh Keown and Jimmy Maher, to Senior Creative Director titles. Mr. Genzo placed Mr. Kang in a less senior position.

40.    On April 8, 2022, Mr. Kang had sent an unconscious bias training video series to EVP of People & Culture, Ren Akinci, and Chair of Emerald's DEI Advisory Board, Ron Walden. Ms. Akinci was not aware of this training. This was the most recent training directed to all managers to undertake by then CEO, Brian Field, back on June 18, 2020. This training encouraged employees to share their unconscious bias experiences, how it affected their careers, and to offer customized training. Mr. Kang emphasized to Ms. Akinci how this training would create a positive impact, as it would be meaningful and lasting for Emerald, along with aligning in the spirit of doing the right thing.

41.    On April 22, 2022, for documentation and closure, Ms. Kang communicated all grievances to Mr. Reaves. Mr. Kang reported wage violations discrimination experiences by another direct report, and discriminatory sales practices.

42.    In the Summer of 2022, the leaders of the diversity program stated they did not want to conduct an employee survey on diversity, fearing it would "open a can of worms".

43.    On August 18, 2022, Mr. Kang asked his new manager, Josh Keown, Senior Creative Director, to complete his "next potential position" form field in Emerald's goal setting system. Mr. Keown stated to Mr. Genzo, "if anyone is deserving of a promotion it is Mr. Kang". Mr. Keown informed Mr. Kang that he would discuss Mr. Kang's "next potential position" with Mr. Genzo, but no response was provided.

44.    On September 15, 2022, Mr. Kang again asked Mr. Keown for his "next potential position" form field to be filled out. Again, Mr. Keown said he would discuss with Mr. Genzo. No response was given.

45.    On December 19, 2022, Mr. Kang and Mr. Keown met to discuss Mr. Kang's 2022 performance review. Mr. Keown confirmed Mr. Kang did an amazing job leading his team. Mr. Keown told Mr. Genzo, "If anyone deserves to move up, it is Raymond (Kang)."

46.    In the Spring of 2023, Mr. Kang stated in a People Pillar meeting of the diversity team, consisting mostly of People & Culture staff, that there is value in conducting surveys on diversity. This suggestion was dismissed by the People & Culture staff.

EXHIBIT A
19

47.    On March 30, 2023, Emerald wrongfully terminated Mr. Kang, rather than giving him a promotion, purportedly as part of a reduction in force. However, Mr. Kang was the only non-white person removed from his assigned business units and department.

48.    Mr. Kang, over 50 years old, and his colleague Laurie Stiglitz, over 60 years old, were the two oldest workers and only two in their primary assigned business unit (Action Sports Group/Outdoor Retailer) to be selected for termination. Younger workers in this unit were not impacted by the reduction in force. Emerald used a reduction in force as a pretext to terminate and retaliate against our client on the basis of race and age discrimination.

49.    Emerald did not fire less qualified, white employees and did not fire employees who remained silent about discrimination they observed at Emerald. The foregoing demonstrates that Emerald fired Mr. Kang in retaliation for Mr. Kang's constantly reporting racial discrimination, a wage violation, and unethical sales practices adversely impacting minorities.

50.    As a direct result of the discriminatory and harassing treatment by Defendants, Mr. Kang finds himself upset, depressed, anxious, and embarrassed. Mr. Kang is in distress as he cannot sleep at night, grinds his teeth, and finds himself questioning his abilities and his worth.

51.    Defendants have discriminated and retaliated against Mr. Kang based on age and race/national origin discrimination and in violation of Cal. Gov. Code § 12940. Due to such conduct, Defendants caused Mr. Kang intentional emotional distress, stress, and anxiety.

### *FIRST CAUSE OF ACTION*

*Retaliation*

*Cal. Gov't Code §12940(h)*

*(Against All Defendants)*

52.    Plaintiff re-pleads, re-alleges, and incorporates by reference each allegation set forth in this Complaint.

53.    At all relevant times, the California Fair Employment & Housing Act, sections 12940, et seq., was in full force and effect, and binding on Defendants.

54.    FEHA makes it an unlawful employment practice for an employer to retaliate against an employee who has opposed a forbidden practice or filed a complaint against an employer or supervisor.

8
COMPLAINT FOR DAMAGES

EXHIBIT A
20

CGC §12940(h).

55.    Government Code section 12940(h) provides in relevant part:

It is an unlawful employment practice . . . (h) For any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part.

56.    Defendants were Plaintiff's employer, and Plaintiff was Defendants' employee.

57.    Plaintiff made multiple complaints to Defendants reporting racial discrimination, wage violations, and unethical sales practices adversely impacting minorities. Plaintiff was then discriminated against based on his race and age and denied promotion and trainings.

58.    Defendants retaliated against Plaintiff by terminating Plaintiff's employment.

59.    Plaintiff was harmed.

60.    Defendants' conduct was a substantial factor in causing Plaintiff's harm.

61.    The conduct of Defendants and each of them as described above was malicious, fraudulent, or oppressive and done with a willful and conscious disregard for Plaintiff's rights. Defendants and each of them, and their agents/employees or supervisors, authorized, condoned, and ratified the unlawful conduct of each other.  Consequently, Plaintiff is entitled to punitive damages against each of said Defendants.

### SECOND CAUSE OF ACTION

*Failure to Prevent Discrimination and Harassment*

*Cal. Lab. Code § 12940*

*(Against All Defendants)*

62.    Plaintiff re-pleads, re-alleges, and incorporates by reference each and every allegation set forth in this Complaint.

63.    Government Code section 12940(m)(2) provides in relevant part:

It is an unlawful employment practice . . . (k) For an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring.

64.    Defendants wrongfully failed to take all reasonable steps necessary to prevent harassment

9

COMPLAINT FOR DAMAGES

**EXHIBIT A**
21

and discrimination of Plaintiff based on his age and race.

65.    Plaintiff suffered and continues to suffer harm as a result of Plaintiff's discharge by Defendants.

66.    Defendants' conduct was a substantial factor in causing Plaintiff's harm.

67.    Under Government Code section 12940, Plaintiff is entitled to recover Plaintiff's economic and noneconomic damages caused by Defendants' unlawful practices.  Plaintiff is also entitled to reasonable attorney's fees and costs pursuant to Government Code section 12965.

68.    The conduct of Defendants and each of them as described above was malicious, fraudulent, or oppressive and done with a willful and conscious disregard for Plaintiff's rights. Defendants and each of them, and their agents/employees or supervisors, authorized, condoned, and ratified the unlawful conduct of each other.  Consequently, Plaintiff is entitled to punitive damages against each of said Defendants.

### THIRD CAUSE OF ACTION

*Wrongful Termination in Violation of Public Policy*

*(Against All Defendants)*

69.    Plaintiff re-pleads, re-alleges, and incorporates by reference each and every allegation set forth in this Complaint.

70.    Art. I, § 8, of the California Constitution provides that a person may not be disqualified from pursuing a profession or employment because of their age or race.

71.    At all times herein mentioned in this complaint, California Government Code Section 12940 (a), was in full force and effect and were binding on the Defendants and the Defendants were subject to their terms, and therefore Defendant was required to refrain from violations of public policy, including discrimination based on age, gender, and race in violation of FEHA and in retaliation for complaining of said discrimination.

72.    Defendants were Plaintiff's employer, and Plaintiff was Defendants' employee.

73.    Defendant terminated Plaintiff in violation of Plaintiff's rights and public policy.

74.    Plaintiff is informed and believes and thereon alleges that his protected status (age/race)

EXHIBIT A

22

1  and/or his protestation against being discriminated against based on said protected status as alleged

2  above, were, in part, factors in Defendants' decision to terminate Plaintiff's employment.

3      75.    Plaintiff was harmed.

4      76.    Defendants' conduct was a substantial factor in causing Plaintiff's harm.

5      77.    As a proximate result of Defendants' conduct, Plaintiff has suffered special damages in the

6  form of lost earnings, benefits and/or out of pocket expenses in an amount according to proof at the time

7  of trial. As a further direct and proximate result of Defendants' conduct, Plaintiff will suffer additional

8  special damages in the form of lost future earnings, benefits and/or other prospective damages in an

9  amount according to proof at the time of trial.

10      78.    As a further direct and proximate result of Defendants' conduct, Plaintiff has suffered loss

11  of financial stability, peace of mind and future security, and has suffered embarrassment, humiliation,

12  mental and emotional pain and distress and discomfort, all to his detriment and damage in amounts not

13  fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

14      79.    In violation of public policy, Defendants terminated Plaintiff because he is 53-year-old

15  Asian male who was wrongfully terminated, despite the fact that Defendants knew that Plaintiff was

16  experienced and able to perform the essential functions of his position and had done so since 1993 as a

17  Graphic Designer and a Creative Director since 2013.

18      80.    The conduct of Defendants as described above was malicious, fraudulent, or oppressive

19  and done with a willful and conscious disregard for Plaintiff's rights. Defendant and each of them, and

20  their agents/employees or supervisors, authorized, condoned and ratified the unlawful conduct of each

21  other.  Consequently, Plaintiff is entitled to punitive damages against each of said Defendants.

22  ***FOURTH CAUSE OF ACTION***

23  *Intentional Infliction of Emotional Distress*

24  *(Against All Defendants)*

25      81.    Plaintiff re-pleads, re-alleges, and incorporates by reference each and every allegation set

26  forth in this Complaint.

27      82.    Defendant's treatment of Plaintiff as discussed supra, exceeds the bounds of decency, is

28  intolerable within our civilized community, and is therefore outrageous.

---

EXHIBIT A

83.     Defendant's actions, as discussed supra, were intended to cause Plaintiff to suffer the resulting emotional distress.

84.     Defendants succeeded in their attempt to cause Plaintiff to suffer extreme emotional distress, as indicated by the lingering anxiety, stress, depression, lethargy, finding himself upset, insomnia, and embarrassment, that are the direct and proximate results of Defendant's conduct.

85.     Plaintiff was harmed.

86.     Defendant's conduct was a substantial factor in causing Plaintiff's harm.

87.     The conduct of Defendant as described above was malicious, fraudulent, or oppressive and done with a willful and conscious disregard for Plaintiff's rights. Defendant and each of them, and their agents/employees or supervisors, authorized, condoned and ratified the unlawful conduct of each other.  Consequently, Plaintiff is entitled to punitive damages against Defendant.

### FIFTH CAUSE OF ACTION

*Age Discrimination*

*Cal. Gov. Code § 12940*

*(Against All Defendants)*

88.     Plaintiff re-pleads, re-alleges, and incorporates by reference each and every allegation set forth in this Complaint.

89.     Government Code section 12940(a) provides in relevant part:

> It is an unlawful employment practice. . . (a) [f]or an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

90.     At all times herein mentioned, Government Code § 12940, et seq. was in full force and effect and binding upon Defendants, and each of them. These laws make it an unlawful employment practice to discriminate against any employee on the basis of his age.

91.    Defendants were Plaintiff's employer.

92.    Plaintiff was a male over the age of 50.

93.    Plaintiff was able to perform the essential job duties of Plaintiff's position.

94.    Throughout the period of Plaintiff's employment, Plaintiff was discriminated against by reason of his age, and was subjected to harassment, discrimination and retaliation by Defendants.

95.    Defendants wrongfully discriminated against Plaintiff based on his age.

96.    Defendants continually gave employees of the younger age more work opportunities and promotions than they offered or allowed for Plaintiff.

97.    Such actions were in direct violation of Government Code Section 12940 and were done with the intent of depriving Plaintiff of his rights to equal employment opportunity and for the purpose of depriving Plaintiff of the benefits of his employment.

98.    Defendants engaged in the aforementioned unlawful actions, including but not limited to discrimination, harassment and retaliation on the basis of Plaintiff's age.

99.    Despite being aware of the discriminatory treatment of Plaintiff, Defendants failed to take any steps to prevent or correct the misconduct.

100.    Plaintiff believes and alleges that Plaintiff's age and race were a substantial and determining factor in Defendants' decision to terminate Plaintiff's employment.

101.    Defendants' termination of Plaintiff as alleged in this complaint constitutes an unlawful employment practice in violation of Cal. Gov. Code § 12940(a).

102.    As direct, foreseeable, and proximate results of Defendants' discriminatory acts, Plaintiff has suffered and continues to suffer substantial losses in earnings and job benefits, and has suffered and continues to suffer humiliation, embarrassment and mental and emotional distress, and discomfort, all to Plaintiff's damage in an amount to be proven at trial.

103.    Under Government Code section 12940, Plaintiff is entitled to recover Plaintiff's economic and noneconomic damages caused by Defendants' unlawful practices. Plaintiff is also entitled to reasonable attorney's fees and costs pursuant to Government Code section 12965.

104.    The conduct of Defendants and each of them as described above was malicious, fraudulent, or oppressive and done with a willful and conscious disregard for Plaintiff's rights. Defendants and each of them, and their agent/employees or supervisors, authorized, condoned, and ratified the unlawful conduct

EXHIBIT A
25

of each other. Consequently, Plaintiff is entitled to punitive damages against each of said Defendants.

### SIXTH CAUSE OF ACTION

*Racial Discrimination*

*Cal. Gov. Code § 12940*

*(Against All Defendants)*

105.    Plaintiff re-pleads, re-alleges, and incorporates by reference each and every allegation set forth in this Complaint.

106.    Government Code section 12940(a) provides in relevant part:

> It is an unlawful employment practice. . . (a) [f]or an employer, because of the race . . . of any person . . . to discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

107.    Plaintiff was Defendant's employee and Defendants were Plaintiff's employer.

108.    Defendant wrongfully discriminated against Plaintiff based on his race/color.

109.    Plaintiff, is an Asian male and, was, an employee of Defendant, faced discrimination based on his race during his time as an employee of Defendant.

110.    Despite being aware of the discriminatory treatment of Plaintiff, Defendants failed to take any steps to prevent or correct the unfair treatment.

111.    Defendant ultimately terminated Plaintiff's employment.

112.    Plaintiff believes and alleges that Plaintiff's race/color were a substantial and determining factor in Defendant's decision to terminate Plaintiff's employment.

113.    Defendant's termination of Plaintiff as alleged in this complaint constitutes an unlawful employment practice in violation of Cal. Gov. Code § 12940(a).

114.    As a direct, foreseeable, and proximate result of Defendant's discriminatory acts, Plaintiff has suffered and continues to suffer substantial losses in earnings and job benefits, and has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and discomfort, all to Plaintiff's damage in an amount to be proven at trial.

115.    The conduct of Defendant and each of them as described above was malicious, fraudulent, or oppressive and done with a willful and conscious disregard for Plaintiff's rights.  Defendants and each

---

14

COMPLAINT FOR DAMAGES

1   of them, and their agents/employees or supervisors, authorized, condoned, and ratified the unlawful

2   conduct of each other.  Consequently, Plaintiff is entitled to punitive damages against each of said

3   Defendants.

4                                        ***SEVENTH CAUSE OF ACTION***

5                                         *Failure to Provide Personnel Records*

6                                            *Cal. Labor Code § 1198.5*

7                                             *(Against All Defendants)*

8        116.    Plaintiff re-pleads, re-alleges, and incorporates by reference each and every allegation set

9   forth in this Complaint.

10       117.    California Labor Code section 1198.5(a)(b) provides in relevant part:

11           (a) Every current and former employee, or his or her representative, has
             the right to inspect and receive a copy of the personnel records that the
12           employer maintains relating to the employee's performance or to any
             grievance concerning the employee.
13
             (b) (1) The employer shall make the contents of those personnel records
14           available for inspection to the current or former employee, or his or her
             representative, at reasonable intervals and at reasonable times, but not later
15           than 30 calendar days from the date the employer receives a written
             request, unless the current or former employee, or his or her
16           representative, and the employer agree in writing to a date beyond 30
             calendar days to inspect the records, and the agreed-upon date does not
17           exceed 35 calendar days from the employer's receipt of the written
             request.
18

19       118.    Defendants were Plaintiff's employer, and Plaintiff was Defendants' employee.

20       119.    Plaintiff's representative delivered notice and a signed authorization to release records via

21   email and mail to Defendants in an effort to obtain Plaintiff's personnel file on May 16, 2023.

22       120.    Plaintiff's representative have not received communication or personnel files from

23   Defendants within 30 calendar days from the delivery of the notice.

24                                        ***EIGHTH CAUSE OF ACTION***

25                                         *Failure to Provide Payroll Records*

26                                            *Cal. Labor Code § 226(b)*

27                                             *(Against All Defendants)*

28       121.    Plaintiff re-pleads, re-alleges, and incorporates by reference each and every allegation set

                                                    15
                                         COMPLAINT FOR DAMAGES

                                            **EXHIBIT A**
                                                **27**

forth in this Complaint.

122. California Labor Code section 226(b) provides in relevant part:

> (b) An employer that is required by this code or any regulation adopted pursuant to this code to keep the information required by subdivision (a) shall afford current and former employees the right to inspect or receive a copy of records pertaining to their employment, upon reasonable request to the employer. The employer may take reasonable steps to ensure the identity of a current or former employee. If the employer provides copies of the records, the actual cost of reproduction may be charged to the current or former employee.

123. Defendants were Plaintiff's employer, and Plaintiff was Defendants' employee.

124. Plaintiff's representative delivered notice and a signed authorization to release records via email and mail to Defendants in an effort to obtain Plaintiff's personnel file on May 16, 2023.

125. Plaintiff's representative have not received communication or personnel files from Defendants within 30 calendar days from the delivery of the notice.

126. Under California Labor Code section 226(f), failure by an employer to permit a current or former employee to inespct or receive a copy of records withint the time set forth entitles the employee to recover a seven hundren fifty dollar ($750) penalty from the employer.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against the Defendants, and each of them, as follows:

1. Compensatory damages including emotional distress damages and lost wages, benefits and interest in a sum according to proof;

2. Interest on judgment, including prejudgment interest, at the legal rate;

3. Punitive damages in a sum according to proof;

4. Attorney's fees and costs; and

5. For any further legal and equitable relief, the Court deems proper.

COMPLAINT FOR DAMAGES

EXHIBIT A
28

1    Dated: June 26, 2023.                    **RATNER MOLINEAUX, LLP**

2                                             /s/ *David S. Ratner*

3                                             _____

4                                             David S. Ratner
                                              Shelley A. Molineaux
5                                             Attorneys for Plaintiff Raymond Kang

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**
**29**

# EXHIBIT A



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

# Civil Rights Department

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

June 16, 2023

Shelley Molineaux
1990 N. California Blvd, St 20
Walnut Creek, CA 94598

RE:     **Notice to Complainant's Attorney**
        CRD Matter Number: 202306-21009416
        Right to Sue: Kang / Emerald X, LLC and/or Emerald Expositions, LLC

Dear Shelley Molineaux:

Attached is a copy of your complaint of discrimination filed with the Civil Rights
Department (CRD) pursuant to the California Fair Employment and Housing Act,
Government Code section 12900 et seq. Also attached is a copy of your Notice of Case
Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents. Please refer to the attached Notice of Case Closure and Right to Sue for
information regarding filing a private lawsuit in the State of California. A courtesy "Notice
of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 02/23)

EXHIBIT A
31



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

## Civil Rights Department

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

June 16, 2023

RE:    **Notice of Filing of Discrimination Complaint**
       CRD Matter Number: 202306-21009416
       Right to Sue: Kang / Emerald X, LLC and/or Emerald Expositions, LLC

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil Rights Department (CRD) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 02/23)

**EXHIBIT A**
**32**



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

## Civil Rights Department

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

June 16, 2023

Raymond Kang
24331 Toponas Court
Laguna Niguel, CA 92677

RE:   **Notice of Case Closure and Right to Sue**
CRD Matter Number: 202306-21009416
Right to Sue: Kang / Emerald X, LLC and/or Emerald Expositions, LLC

Dear Raymond Kang:

This letter informs you that the above-referenced complaint filed with the Civil Rights Department (CRD) has been closed effective June 16, 2023 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 02/23)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA**
**Civil Rights Department**
**Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Raymond Kang                                              CRD No. 202306-21009416

                                    Complainant,

vs.

Emerald X, LLC and/or Emerald Expositions, LLC
31910 Del Obispo, Suite 200
San Juan Capistrano, CA 92675

                                    Respondents

---

**1.** Respondent **Emerald X, LLC and/or Emerald Expositions, LLC** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2.** Complainant **Raymond Kang**, resides in the City of **Laguna Niguel,** State of **CA.**

**3.** Complainant alleges that on or about **March 30, 2023**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's national origin (includes language restrictions), age (40 and over), race (includes hairstyle and hair texture).

**Complainant was discriminated against** because of complainant's national origin (includes language restrictions), age (40 and over), race (includes hairstyle and hair texture) and as a result of the discrimination was terminated, denied hire or promotion.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment and as a result was terminated, denied hire or promotion.

**Additional Complaint Details:** Raymond Kang ("Kang") is a 53-year-old Asian male who began working for Miller Freeman, Inc., Emerald X, LLC's predecessor ("Emerald"), on

-1-
*Complaint – CRD No. 202306-21009416*

Date Filed: June 16, 2023

CRD-ENF 80 RS (Revised 12/22)

EXHIBIT A
34

1  September 1, 1993, as a Graphic Designer. Throughout his long tenure, Emerald had gone
2  through different parent company name changes beginning with the first change in 2000
   under the name of VNU Business Media, Inc. and then Nielsen Business Media, Inc. in
3  2006. Mr. Kang eventually became a Creative Director for Emerald Expositions, LLC
   (another predecessor) in 2013, until Emerald X, LLC wrongfully fired him on March 30,
4  2023, under the pretext of a reduction in force (RIF).

5  Throughout his employment at Emerald and its predecessor companies, Mr. Kang had been
   a dedicated employee who was held in high regard until Emerald was subjected Mr. Kang to
6  age and race/national origin discrimination, retaliation, harassment, and wrongful
   termination.
7  Throughout Mr. Kang's entire career, Emerald denied Mr. Kang the promotions he rightfully
   deserved.  Instead, Emerald promoted less qualified, less tenured, mostly younger, white
8  employees to positions that should have gone to Mr. Kang.
   Specifically, Emerald passed Mr. Kang over for management positions in 2003, 2007, 2020
9  and 2022. Under the VP of Creative Services, John Genzo, it appears most promotions
   went to younger, white employees.
10 On April 23, 2003, Emerald denied Mr. Kang a promotion opportunity to a department
   manager position. Mr. Kang had the most tenure, overseeing the most business units with
11 higher revenues. He received a perfect 2002 performance rating and won the most industry
   awards. Mr. Kang was overlooked and passed over to a less tenured, white colleague, Rene
12 Gauthier. The hiring Group Marketing Director, Michael Baker, stated "you don't want this
   job, it's just admin stuff" in response to Mr. Kang's interest in the position.
13 On March 27, 2007, Mr. Kang was denied a promotion opportunity for a department
   manager position a second time. Mr. Kang had the most tenure, overseeing the most
14 business units with higher revenues. Mr. Kang received an excellent 2006 performance
   rating and won the most industry awards. Still, Mr. Kang was overlooked and passed over
15 by a less tenured, white colleague, Jennie Brewton. The hiring Group Marketing Director,
   Jim Palmer, did not allow Mr. Kang any formal opportunity to apply.
16
17 On September 17, 2007, Mr. Kang reported concerns over Emerald's performance review
   and promotional processes not allowing for equal opportunity. HR representative, Mardel
18 Nesby, agreed that the performance review process required improvement. Mr. Nesby
   confirmed he would not have handled the promotion in the way that Mr. Palmer had handled
19 it.

20 On January 15, 2008, Mr. Kang's "Development Plan" was left blank. Human Resources
   Generalist, Sara Rogers, stated that the managers did not know how to use the new system,
21 yet every other form field was filled out in Mr. Kang's performance review.

22 On October 22, 2008, Mr. Kang had asked the VP and GM of the Sports Group, Joe Flynn,
23 for input on a development/career growth plan. No response was given.

24 On June 11, 2009, Mr. Kang was diagnosed with Barrett's Esophagus due to elevated acid
   production from stress going on in the workplace environment.
25

26                                           -2-
                            Complaint – CRD No. 202306-21009416
27
   Date Filed: June 16, 2023
28

                                                        CRD-ENF 80 RS (Revised 12/22)

1
2
3

On November 16, 2009, Mr. Kang organized a meeting with the VP of Marketing, Joanne Wheatley, to discuss the value of diversity, lack of diversity in Emerald X's leadership positions, and implementation of a mentorship program. At the meeting, Ms. Wheatley asked Mr. Kang, "Why are you talking about diversity?" Following this meeting, Mr. Kang's assignment changed adversely.

4
5
6
7

On February 23, 2010, Mr. Kang was transferred to a business unit with an office 60 miles away in Los Angeles, CA from his home in south Orange County, CA, resulting in a 1.5 to 2-hour commute. In the breakroom, Group President David Loechner suggested Mr. Kang move to Los Angeles when communicating about the commute. In addition to the job assignment change, Mr. Kang was restructured into a lower position in reporting while being given more tasks, and not provided a performance review, unlike his white peers.

8
9

On August 19, 2010, Mr. Kang was excluded from a series of leadership program meetings covering company culture, leadership, coaching and development. He was not afforded the same opportunities as his colleagues, despite his request to participate. He was not provided with any reasoning for being excluded from the program.

10
11
12

On December 9, 2010, Mr. Kang was excluded from a company mentorship program. He contacted HR to express his interest in participating in the mentorship program. The HR representative that organized the program, Tracey Syndor, informed Mr. Kang that the business leaders chose to remove Mr. Kang from the program.

13
14
15

On November 1, 2019, the new CEO, Sally Shankland addressed Emerald X's lack of diversity in senior management positions in response to Mr. Kang's comment that Emerald X employees ranked 'diversity' and 'upward mobility' last on an employee satisfaction survey. Ms. Shankland stated the lack of diversity was due to "unconscious bias."

16
17
18
19

On June 30, 2020, Mr. Kang expressed his concerns of racism and discrimination directly to the new interim CEO, Brian Field. Shortly thereafter, Mr. Field restructured Mr. Kang's department. Mr. Field promoted John Genzo, a white man with only 4 years' tenure, to Vice President of Creative Services without allowing others with 20+ years tenure the opportunity to apply. The two overlooked for the opportunity were Mr. Kang, an Asian individual, and an African American individual.

20

When Mr. Kang complained about Emerald X's systemic discrimination, Mr. Field directed Mr. Kang to Angelique Carbo, EVP of People & Culture.

21
22
23

On July 1, 2020, Ms. Carbo contacted Mr. Kang to discuss his exchange with Mr. Field. Ms. Carbo admitted that she had received similar complaints from other employees of discrimination saying the "diversity programs do not work." Ms. Carbo then forwarded Mr. Kang to Eric Reaves, Vice President of People and Culture.

24
25

On July 9, 2020, Mr. Reaves contacted Mr. Kang to discuss the issues communicated with Ms. Carbo. Mr. Kang complained about an unethical and discriminatory sales practice of Emerald X's largest business unit, ASD Marketplace. Mr. Kang described the past

26

-3-

*Complaint – CRD No. 202306-21009416*

27

Date Filed: June 16, 2023

28

CRD-ENF 80 RS (Revised 12/22)

1  discrimination experienced by former African American, Hispanic, and Asian employees. Mr.
   Reaves also admitted he received similar complaints in the past from other employees. Mr.
2  Reaves forwarded the issue to the Director of HR, Demetrius Junior.

3  On July 22, 2020, Mr. Junior stated that the business unit ASD had put an end to
   discriminatory sales practice and had referred to it as "shenanigans".
4
   On February 10, 2021, Mr. Kang and Mr. Reaves discussed a new tool to help in reviews
5  and promotions. Mr. Reaves stated, "if you start with a slate of white people, no minorities,
   the opportunity for those minorities in decision making forums get phased out". Mr. Reaves
6  stated the organization was historically exclusionary. Mr. Reaves informed Mr. Kang that the
   CFO, David Doft, would not likely want to invest in proper diversity training due to high costs.
7  Mr. Kang shared his complaints of being passed over for promotions, mentioning other
   incidences of other Asian, Black, and Hispanic employees also being adversely impacted by
8  discrimination.

9
   On December 22, 2021, John Genzo, Vice President of Creative Services, removed the
10 largest business unit, ASD Marketplace, from Mr. Kang's assignments and assigned the unit
   to himself. He also removed one of Mr. Kang's direct reports and one of his most recent
11 hires, Caitlin Caruso, Lead Designer. Under Mr. Kang's assignment, ASD Marketplace
   exceeded its sales expectations. Emerald X considered ASD Marketplace a "cash cow" for
12 the company.

13 On February 16, 2022, Mr. Kang reported discrimination experienced by a direct report,
   Natalie Thavenot, to Dawn Stewart, People & Culture Business Partner, and Mr. Reaves,
14 VP of People & Culture. Ms. Thavenot shared with Mr. Kang that she was frustrated she
   wasn't getting promoted quicker. Ms. Thavenot believed she was experiencing
15 discrimination as others with less experience were getting promoted faster.

16
   On March 3, 2022, Mr. Kang reported that one of his direct reports, Marisa Lowey-Ball,
17 received compensation that violated California law.

18 In the Spring of 2022, Mr. Kang witnessed Mr. Genzo stating that, "promotions go to those
   who take on responsibilities outside their normal duties and who work on the largest
19 business units." Mr. Kang oversaw the largest business units in every promotion opportunity
   in his tenure with Emerald X and worked on more outside corporate projects than any other
20 peer.

21 On March 15, 2022, Mr. Genzo removed Mr. Kang from weekly senior director meetings in
   retaliation for Mr. Kang reporting the wage violation.
22
   On March 25, 2022, Mr. Kang reported to Mr. Junior about the discrimination experienced
23 by a direct report, Natalie Thavenot.

24

25

26                                         -4-
                            *Complaint – CRD No. 202306-21009416*
27
   Date Filed: June 16, 2023
28
                                                          CRD-ENF 80 RS (Revised 12/22)

On April 4, 2022, Mr. Genzo promoted two significantly less experienced, less tenured, white males, Josh Keown and Jimmy Maher, to Senior Creative Director titles. Mr. Genzo placed Mr. Kang in a less senior position.

On April 8, 2022, Mr. Kang had sent an unconscious bias training video series to EVP of People & Culture, Ren Akinci, and Chair of Emerald's DEI Advisory Board, Ron Walden. Ms. Akinci was not aware of this training. This was the most recent training directed to all managers to undertake by then CEO, Brian Field, back on June 18, 2020. This training encouraged employees to share their unconscious bias experiences, how it affected their careers, and to offer customized training. Mr. Kang emphasized to Ms. Akinci how this training would create a positive impact, as it would be meaningful and lasting for Emerald X, along with aligning in the spirit of doing the right thing.

On April 22, 2022, for documentation and closure, Ms. Kang communicated all grievances to Mr. Reaves. Mr. Kang reported wage violations discrimination experiences by another direct report, and discriminatory sales practices.

In the Summer of 2022, the leaders of the diversity program stated they did not want to conduct an employee survey on diversity, fearing it would "open a can of worms".

On August 18, 2022, Mr. Kang asked his new manager, Josh Keown, Senior Creative Director, to complete his "next potential position" form field in Emerald X's goal setting system. Mr. Keown stated to Mr. Genzo, "if anyone is deserving of a promotion it is Mr. Kang". Mr. Keown informed Mr. Kang that he would discuss Mr. Kang's "next potential position" with Mr. Genzo, but no response was provided.

On September 15, 2022, Mr. Kang again asked Mr. Keown for his "next potential position" form field to be filled out. Again, Mr. Keown said he would discuss with Mr. Genzo. No response was given.

On December 19, 2022, Mr. Kang and Mr. Keown met to discuss Mr. Kang's 2022 performance review. Mr. Keown confirmed Mr. Kang did an amazing job leading his team. Mr. Keown told Mr. Genzo, "If anyone deserves to move up, it is Raymond (Kang)."

On March 30, 2023, Emerald wrongfully terminated Mr. Kang, rather than giving him a promotion, purportedly as part of a reduction in force. However, Mr. Kang was the only non-white person removed from his assigned business units and department.

In the Spring of 2023, Mr. Kang stated in a People Pillar meeting of the diversity team, consisting mostly of People & Culture staff, that there is value in conducting surveys on diversity. This suggestion was dismissed by the People & Culture staff.

Mr. Kang, over 50 years old, and his colleague Laurie Stiglitz, over 60 years old, were the two oldest workers and only two in their primary assigned business unit (Action Sports Group/Outdoor Retailer) to be selected for termination. Younger workers in this unit were not

-5-

*Complaint – CRD No. 202306-21009416*

Date Filed: June 16, 2023

CRD-ENF 80 RS (Revised 12/22)

EXHIBIT A

38

1  impacted by the reduction in force. Emerald used a reduction in force as a pretext to
2  terminate and retaliate against our client on the basis of race and age discrimination.

3  Emerald did not fire less qualified, white employees and did not fire employees who
4  remained silent about discrimination they observed at Emerald X. The foregoing
   demonstrates that Emerald fired Mr. Kang in retaliation for Mr. Kang's constantly reporting
5  racial discrimination, a wage violation, and unethical sales practices adversely impacting
   minorities.

6  As a direct result of the discriminatory and harassing treatment by Defendants, Mr. Kang
7  finds himself upset, depressed, anxious, and embarrassed. Mr. Kang is in distress as he
   cannot sleep at night, grinds his teeth, and finds himself questioning his abilities and his
8  worth.

9  Defendants have discriminated and retaliated against Mr. Kang based on age and
   race/national origin discrimination and in violation of Cal. Gov. Code § 12940. Due to such
10 conduct, Defendants caused Mr. Kang intentional emotional distress, stress, and anxiety.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                               -6-
                                    *Complaint – CRD No. 202306-21009416*
27
   Date Filed: June 16, 2023
28
                                                                    CRD-ENF 80 RS (Revised 12/22)

**EXHIBIT A**
**39**

1  VERIFICATION

2  I, **Shelley A. Molineaux**, am the **Attorney** in the above-entitled complaint.  I have
3  read the foregoing complaint and know the contents thereof.  The matters alleged are
   based on information and belief, which I believe to be true.

4
   On June 16, 2023, I declare under penalty of perjury under the laws of the State of
5  California that the foregoing is true and correct.

6                                                                  **Walnut Creek, CA**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                              -7-
                                    *Complaint – CRD No. 202306-21009416*
27
   Date Filed: June 16, 2023
28
                                                    CRD-ENF 80 RS (Revised 12/22)

EXHIBIT A
40